UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THELMA YARBER,<br><br>   Plaintiff,<br><br>v.<br><br>KIA AMERICA, INC,<br><br>   Defendant. | Case No. 22-cv-03411-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 18, 19 |

Before the Court are Defendant Kia America's motions to dismiss and to strike. Dkt. Nos. 18, 19. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). The Court **GRANTS** the motion to dismiss and **DENIES** the motion to strike.

## I. BACKGROUND

Plaintiff Thelma Yarber, who purchased a 2019 Kia Soul, brings this vehicle defect case against Kia. *See* Dkt. No. 3 ("Compl.") ¶ 8. She alleges that 2012 to 2019 Kia Souls with 2.0 or 1.6L GDI engines are "susceptible to sudden stalling while at any speed and/or to burst into flames" and have catalytic converters that overheat. *Id.* ¶¶ 16, 18. Plaintiff brings causes of action for violation of California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.* (Counts I–III), violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, (Count V), breach of implied warranty of merchantability (Count IV), and fraudulent inducement-concealment (Count VI). Compl. ¶¶ 83–124.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

1  defendant may move to dismiss a complaint for failing to state a claim upon which relief can be
2  granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the
3  complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."
4  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule
5  12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible
6  on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible
7  when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that
8  the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

9      Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a
10  claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity
11  the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317
12  F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how"
13  of the alleged conduct, so as to provide defendants with sufficient information to defend against
14  the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent,
15  knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.
16  Rule 9(b).

17      In reviewing the plausibility of a complaint, courts "accept factual allegations in the
18  complaint as true and construe the pleadings in the light most favorable to the nonmoving party."
19  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless,
20  courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of
21  fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
22  2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

23      Even if the court concludes that a 12(b)(6) motion should be granted, the "court should
24  grant leave to amend even if no request to amend the pleading was made, unless it determines that
25  the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203
26  F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

### III. DISCUSSION

Defendant moves to dismiss Plaintiff's sixth cause of action for fraudulent inducement-concealment and request for punitive damages. The Court will dismiss both with leave to amend.

#### A. Fraudulent Concealment

Defendant first argues that the fraudulent concealment claim should be dismissed because (1) it is barred by the economic loss rule and (2) the complaint lacks the factual specificity required to plead fraud. *See* Dkt. No. 19 at 1–2. As an initial matter, the Court disagrees with Plaintiff's suggestion that she need not plead omissions-based claims with particularity. *See* Dkt. No. 27 at 9. The Ninth Circuit has explicitly applied Rule 9(b)'s heightened pleading standard to nondisclosure claims. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Although conditions of a person's mind can be alleged generally, allegations of knowledge must still satisfy the plausibility standard of Rule 8, and conclusory statements are insufficient. *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2015 WL 4967535, at *10 (N.D. Cal. Aug. 20, 2015).

##### i. Economic Loss Rule

The economic loss rule provides that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *See Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (Cal. 2004). Economic losses include damages for inadequate value, the costs of repair or replacement, and any consequent lost profits. *Id.* at 989. The rule "bar[s] a plaintiff's tort recovery of economic damages unless such damages are accompanied by some form of *physical harm* (i.e., personal injury or property damage)." *See N. Am. Chem. Co. v. Super. Ct.*, 59 Cal. App. 4th 764, 777 (Cal. Ct. App. 1997) (emphasis in original).

In *Robinson Helicopter*, the California Supreme Court created an exception to the economic loss rule for affirmative misrepresentations, but explicitly declined to reach the issue of whether there was an exception for intentional concealment. *See* 34 Cal. 4th at 990–91. Since then, district courts have reached differing conclusions on the application of the economic loss rule to fraudulent concealment claims, and the Ninth Circuit recently certified the question to the California Supreme Court. *See Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191–92 (9th Cir.

3

2021).  In the absence of California Supreme Court authority, the Court continues to read *Robinson Helicopter* as a narrow exception to the economic loss rule.  *See, e.g.*, *Williams v. Tesla, Inc.*, No. 20-CV-08208-HSG, 2022 WL 899847, at *6–7 (N.D. Cal. Mar. 28, 2022).

Here, Plaintiff asserts fraud based on an omission and claims that she suffered economic loss as a result.  *See* Compl. at ¶¶ 117–24 ("Fraudulent Inducement – Concealment").  Plaintiff does not allege that she actually suffered any personal injury or damage to property.  At least as currently alleged, Plaintiff has suffered only economic losses, so the economic loss rule bars her fraudulent concealment claim.  *See Robinson*, 34 Cal. 4th at 988.

### ii. Pre-Sale Knowledge

Plaintiff's fraudulent concealment claim also fails because the allegations do not plausibly support the inference that Defendant was aware of the specific alleged defect.  To state a claim for fraudulent concealment under California law, a defendant "must have known of the defect at the time of sale . . . ."  *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 564–65 (N.D. Cal. 2019).  After all, a defendant cannot "disclose facts of which it was unaware."  *See id.* at 565 (quoting *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 926–27 (N.D. Cal. 2018)).  Nor can a defendant have "intent to defraud"—another element of fraudulent concealment—without pre-sale knowledge.  *See Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1011–12 (9th Cir. 2011) (listing the elements of fraudulent concealment).  Here, Plaintiff alleges that there was a duty to disclose the alleged defect because Defendant had superior knowledge of it and actively concealed it.  *See* Dkt. No. 27 at 7–8; *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (Cal. Ct. App. 1997).

Plaintiff points to several potential sources of pre-sale knowledge, but none of them concern her 2019 Kia Soul, or even her alleged defect.  *See* Compl. ¶¶ 18–36.  For example, Plaintiff cites investigations leading to recalls of *other* model years of the Kia Soul (2012–2016), recalls of other makes and models entirely (2010–2012 Hyundai Tucson), and technical service bulletins that do not concern Plaintiff's vehicle or defect.  *See id.*  Yet "[w]hen addressing a defendant's pre-sale knowledge, courts have held that the defendant must have knowledge of the specific defect alleged, not a general defect."  *Victorino v. FCA US LLC*, No. 16-cv-1617-GPC (JLB), 2018 WL 1083395, at *8 (S.D. Cal. Feb. 27, 2018).

4

Plaintiff implies that the missing link to the recall of 2012 to 2016 Kia Souls, which involved overheating catalytic converters, is that her vehicle has the same engine. *See* Dkt. No. 27 at 2; Compl. ¶¶ 16, 18. The complaint itself is actually unclear on what engine Plaintiff's vehicle has,[1] but even putting that aside, there is nothing in the complaint that indicates Defendant should have assumed the same defect was present in every vehicle with the same general engine type.[2] *See In Re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, No. 16-CV-06391-BLF, 2020 WL 7664461, at *5 (N.D. Cal. Dec. 24, 2020) (holding that plaintiffs may not "piggyback" on the presence of an alleged defect in another product model "with conclusory allegations of similarities"). If anything, the allegations undermine that notion, as the recall of 2012 to 2016 models seems to have related to a specific part, the Engine Control Unit, which was "changed and improved to prevent overheating of the catalytic converter . . . beginning with the start of the 2017 MY Soul production." *See* Compl. ¶ 21.

Plaintiff's other allegations of pre-sale knowledge are vague and conclusory. Plaintiff describes "durability testing" and data collection without explaining how either would have alerted Defendant to the alleged defect. *See id.* ¶¶ 35, 47; *Williams*, 2022 WL 899847, at *4 ("Plaintiff needs to do more than allege that car manufacturers perform pre-sale testing. For example, to create a plausible inference, a plaintiff might allege *how* pre-sale testing would have alerted a defendant to the alleged defect."). Plaintiff states, in conclusory fashion, that owners of 2012 to 2019 Kia Soul vehicles have complained about "catastrophic engine failures," but then offers only three undated complaints regarding 2012, 2014, and 2016 models. *See* Compl. ¶¶ 51–52. These cannot be relied upon to establish pre-sale knowledge. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147–48 (9th Cir. 2012) (finding undated complaints did not support the inference that defendant was aware of the defect at the time of sale).

---

[1] Plaintiff states in her opposition that her vehicle has the 1.6L GDI engine. *See* Dkt. No 27 at 2.

[2] Notably, the only allegations in the complaint suggesting that a defect manifested in Plaintiff's model at all are distinctly vague: Plaintiff states her vehicle "continued to exhibit symptoms of defects . . . ." and that defects "manifested themselves," including "the electrical system," and "the engine." See Compl. ¶¶ 13, 62. Plaintiff's opposition in turn refers to an "engine defect," a "transmission defect" and an "electrical defect." *See* Dkt. No. 27 at 2–3. Any alleged pre-sale knowledge must go to the *specific* defect alleged.

5

### iii. Reliance

Defendant also argues that Plaintiff has not adequately alleged that she would have been aware of any disclosure of the defect. Dkt. No. 19 at 11–12. The Court agrees. Although there are "various ways in which a plaintiff can demonstrate that she would have been aware of a defect, had disclosure been made," *see Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015), Plaintiff's allegations on this point are vague recitations of the requirements for pleading reliance in a vehicle defect case, *see* Compl. ¶¶ 8, 123. Notably, Plaintiff does not disclose where or how she purchased her vehicle or what pre-purchase materials she reviewed, so it is impossible for the Court to evaluate if she would have had an opportunity to receive information at the point of sale had it been disclosed. *See, e.g.*, *Daniel*, 806 F.3d at 1226; *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 968–69 (N.D. Cal. 2018) (finding a plaintiff who purchased vehicle from a private party failed to adequately allege reliance, but plaintiffs who purchased vehicles from Ford dealerships did, with the "where" under Rule 9(b) being the "point of sale at the dealership").

The Court **DISMISSES** Plaintiff's fraudulent concealment claim with leave to amend. To the extent Plaintiff can truthfully do so, to be viable any amended claim must allege personal injury or damage to other property and address the noted pleading deficiencies.

### B. Punitive Damages

In the absence of a viable fraud allegation, the Court also finds that Plaintiff has no basis for seeking punitive damages, which cannot be recovered for contract claims.[3] *See Hanai v. Mercedes-Benz USA, LLC*, No. C 20-06012 WHA, 2021 WL 2476783, at *3 (N.D. Cal. June 17, 2021). Furthermore, Plaintiff has failed to adequately allege facts that would support a finding of "oppression, fraud, or malice" on the part of an "officer, director, or managing agent." *See* Cal. Civ. Code § 3294; *Robinson v. J.M. Smucker Co.*, No. 18-CV-04654-HSG, 2019 WL 2029069, at

---

[3] Plaintiff is incorrect that she may seek punitive damages under the Song-Beverly Act. Although courts have used the word "punitive" to describe the civil penalties available under the Act, those penalties are "distinct from punitive damages under California law." *See Marshall v. Ford Motor Co.*, No. 1:17-CV-0006 AWI MJS, 2017 WL 1351343, at *2 (E.D. Cal. Apr. 7, 2017) ("Song-Beverly is not a proper basis for Plaintiff's request for punitive damages").

6

1  \*6 (N.D. Cal. May 8, 2019).  Accordingly, the Court **DISMISSES** Plaintiff's request for punitive
2  damages with leave to amend.

### C. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Z.A. ex rel. K.A. v. St. Helena Unified Sch. Dist.*, No. C 09-03557 JSW, 2010 WL 370333, at \*2 (N.D. Cal. Jan. 25, 2010).  "Where there is any doubt as to the relevance of the challenged allegations, courts generally err on the side permitting the allegations to stand . . . ." *See id.* (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517, 534 (1994)).  This is particularly true when the moving party shows no prejudice and when striking the allegations will not streamline the ultimate resolution of the action. *Id.*

Defendant seeks to strike several paragraphs about recalls, vehicles, and lawsuits that it deems irrelevant.  *See* Dkt. No. 18 at 2.  Plaintiff argues those paragraphs go to Defendant's pre-sale knowledge and willful concealment.  *See* Dkt. No. 28 at 6–7.  As described above, the Court has found these allegations insufficient to establish pre-sale knowledge, but the Court cannot rule out the possibility that Plaintiff may plead a plausible connection to her own defect.  For now, the paragraphs' relevance is in dispute, and they are not so immaterial, impertinent, or scandalous as to justify striking them.  Defendant has pointed to no prejudice it would suffer if they remain.

Defendant also moves to strike the complaint's prayer for punitive damages and related allegations. Dkt. No. 18 at 3.  This is a clear attempt to test the sufficiency and/or substantive merit of the  punitive damages claim.  Use of a Rule 12(f) motion for this purpose is improper. *See Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977) ("Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint."); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010); *Opperwall v. State Farm Fire & Cas. Co.*, No. 17-CV-07083-YGR, 2018 WL 1243085, at \*5 (N.D. Cal. Mar. 9, 2018).

Thus, Defendants' motion to strike is **DENIED**.

7

## IV. CONCLUSION

The Court **GRANTS** the motion to dismiss, Dkt. No. 19, with leave to amend and **DENIES** the motion to strike, Dkt. No. 18. Plaintiff may file an amended complaint within 21 days of the date of this order.

The Court further **SETS** a telephonic case management conference on May 2, 2023, at 2:00 p.m. All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929;

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the CRD. The Court DIRECTS the parties to meet and confer and submit a joint case management statement by April 25, 2023. The parties should be prepared to discuss how to move this case forward efficiently.

**IT IS SO ORDERED.**

Dated: 3/27/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge